<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **Crim. No. 21-877 (KM)** |
| vs. | |
| **THOMAS FARESE and DOMINIC J. GATTO, JR.,** | <u>**MEMORANDUM OPINION AND ORDER**</u> |
| **Defendants.** | |

<u>**ALLEN, U.S.M.J.**</u>

This matter comes before the Court by way of the Government's motion for a protective order, pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure, concerning the disclosure and use of discovery materials to be produced by the Government. (Docket Entry No. 73). This motion follows several attempts by counsel to confer in an effort to resolve disagreements over the appropriate scope of a protective order as well as the procedures to address any unresolved disputes about the confidential designation of materials arising thereunder. Having carefully considered the parties' submissions, and having heard oral argument on February 18, 2022, the Court will grant the Government's motion with amendments to be made consistent with the findings and rulings herein.

**I.   <u>BACKGROUND</u>**

On November 19, 2021, the grand jury returned an eleven-count indictment against Defendants Thomas Farese ("Farese") and Domenic J. Gatto, Jr. ("Gatto") (sometimes collectively "Defendants") in connection with an alleged healthcare fraud scheme. (ECF No. 64; *see* Govt Mov. Bf. at 3, ECF No. 73). Following the grand jury's return of the Indictment, the Government

advised defense counsel that it intended to produce discovery, which was not only voluminous but contained sensitive Medicare beneficiary personally identifiable information ("PII") as well as information relating to ongoing covert law enforcement investigations and criminal cooperators. (ECF No. 73 at 4, 5). As such, the Government sought Defendants' consent to the entry of an umbrella protective order. (*Id.* at 4, 5).

Importantly, Defendants do not object to the entry of a protective order and agree that good cause exists to protect PII and other sensitive information and materials.[1] (Gatto Opp. Bf. at 1 & 5, ECF No. 76). Rather, as detailed below, Defendants submit that the scope of the Government's proposed protective order is improperly broad and contains provisions that are unduly restrictive or burdensome, thereby inhibiting the defense. (*Id.* at 1-3). For nearly two months, beginning in early December 2021, the parties have engaged in several rounds of negotiations over the terms of a protective order designed to balance the Government's interest in protecting sensitive information and materials with Defendants' interest in preparing a full defense. (ECF No. 73 at 5, ECF No. 76 at 5).

While it appears that the parties made some progress toward a compromise on the terms, three primary areas of disagreement remained. As detailed in their respective submissions, the disputes pertain to whether: (1) the Government properly designated two particular categories of information as confidential (categories 3 and 5, described below), (2) it is appropriate to include what Defendants refer to as a "de-designation" protocol provision, and (3) potential expert witnesses, who have not yet signed a retainer agreement, may have access to the Confidential Discovery Materials, and fact witnesses may possess and retain copies of the Confidential

---

[1] In his opposition to the Government's motion, Gatto notes that Farese joins in his opposition and consents to Gatto's proposed form of the protective order. (ECF No. 1 n. 1). During oral argument, Farese's counsel confirmed same.

2

Discovery Materials.  (*See* ECF No. 76 10, 15-24; Govt Rep. Bf. at 2-4, ECF No. 78).  The parties have provided, as exhibits to their respective papers, their various competing versions of the draft protective order.  (*See* ECF No. 73-1; Levine Decl. at Exhs. A-J, ECF No. 77).

On February 18, 2022, the Court held oral argument on the Government's motion.  During oral argument, the parties reached agreement on some areas in dispute.  As to those few disputes remaining, the Court reserved ruling from the bench.

## II.     THE PROPOSED PROTECTIVE ORDER

Preliminary, the Court notes there is no dispute that discovery will be voluminous or that the entry of an umbrella protective order is warranted here. (Gatto Bf. at 16, ECF No. 76 at 16). However, with respect to the parties' disagreements over certain provisions, scope and procedures, the Court highlights the following. The Proposed Protective Order defines six categories of information to be designated as "Confidential Discovery Materials."  They are as follows:

> (1) the personal identifying information ("PII") and confidential health information of third parties, which may include, but is not limited to, social security numbers, dates of birth, telephone numbers, addresses, email accounts, financial information (such as account numbers), and personal health and medical records;
> (2) grand jury transcripts and exhibits presented to the grand jury;
> (3) information about governmental and business matters that are not related to the allegations contained in the Indictment;
> (4) applications and affidavits in support of search warrants obtained during the investigation;
> (5) information of a personal nature including, but not limited to, marital and other intimate relationships, minor children, and personal financial matters; and
> (6) investigative reports, related notes, and documents provided by witnesses to investigators, that may refer to witnesses, unindicted individuals or entities, and ongoing investigations.

(*See* ECF No. 73-1, Opening Paragraph).

Defendants have no objection to four of the six categories that the Government has identified and designated as "Confidential Discovery Materials."  (*Id.* at 10; *see* ECF No. 73-1). Rather, Defendants contend that the Government has not met its burden of proving that a protective

3

order should cover information and materials set forth in categories three and five. (Gatto Bf. at 19-21, ECF No. 76).

Defendants also take issue with the Government's refusal to include a provision governing what Defendants describe as a "de-designation" protocol. Defendants specifically contend that such a provision, as included in paragraph 3 of their proposed version, is required in the event the parties are unable to resolve a dispute over a challenge to a particular document's confidential designation for which Defendants contend the Government has not met its burden to prove protection. (ECF No. 76 at 15-18; ECF No. 77-9 at ¶ 3). The parties also dispute who should be compelled to raise any unresolved dispute with the Court.

Finally, Defendants submit that the protective order places undue restrictions on their ability to defend this case. First, they argue that potential expert witnesses should have access to Designated Confidential Materials without first executing a written retainer agreement. (ECF No. 76 at 10-11). As such, the protective order should be modified to clarify that potential expert witnesses can be shown and receive such information and materials.[2] (*compare* ECF No. 77-9 at ¶ 4 with ECF No. 73-1 at ¶ 3).

Second, Defendants object to provisions of the Government's proposed order, preventing Defendants from providing prospective fact witnesses with copies of confidential documents in advance of potential meetings and/or interviews. (ECF No. 76 at 11). Defendants argue that they would face an undue burden and prejudice as this restriction would necessitate travel for in person meetings during a pandemic. As such, they should be allowed to provide potential witnesses and

---

[2] The parties resolved this disagreement at oral argument, with the Government agreeing to allow defense counsel to share Confidential Designated Materials with a prospective expert witness without having to sign a retainer agreement, provided the prospective expert first signed a non-disclosure agreement and/or agreement to be bound by the protective order. Defense counsel consented to this request. The Court finds that the parties' agreement is appropriate and directs the parties to modify the Government's proposed protective order accordingly. Thus, this dispute is resolved.

4

their counsel with hard copies of documents, provided they are returned promptly after the meeting concludes. (*Id.* at 11, 22-25).

### III.     DISCUSSION

#### A.     Legal Standard

Federal Rule of Criminal Procedure 16 entitles a defendant to relevant discovery. Yet, Rule 16(d)(1) provides that courts "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." To establish "good cause", the proponent must demonstrate "'that disclosure will work a clearly defined and serious injury.'" *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (quoting *Pansy v. Boro. of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). "The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Pansy*, 23 F.3d at 786-87. "The good cause determination must also balance the public's interest in the information against the injuries that disclosure would cause." *Wecht,* 484 F.3d at 211 (citing *Pansy*, 23 F.3d at 786-87).

With these principles in mind, the Third Circuit and courts in this District have endorsed the use of umbrella protective orders to manage the production of voluminous sensitive information. *See id.* (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1112 (3d Cir. 1986)). *See also United States v. Blumberg*, Crim No. 14-458 (JLL) (11/5/14 Order). An umbrella protective order acknowledges that certain specific categories of information qualify, in the first instance, as presumptively confidential and thus good cause exists under the standards enunciated by the Third Circuit in *Pansy* and reiterated in *Wecht* to include them in the proposed protective order.

The Third Circuit, in *Cipollone*, explained that when using an umbrella protective order:

5

> It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head. That does not mean, however, that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected. It is equally consistent with the proper allocation of evidentiary burdens for the court to construct a broad "umbrella" protective order upon a threshold showing by one party (the movant) of good cause. Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential. After the documents delivered under this umbrella order, the opposing party could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents. The burden of proof would be at all times on the movant; only the burden of raising the issue with respect to certain documents would shift to the other party.

*Cipollone*, 785 F.2d at 1122.

### B.   "De-Designation" Provision

The parties do not dispute that the burden of proof to justify confidentiality of any challenged document remains with the Government as the designating party. Rather, the narrow dispute relates to whether the protective order should expressly contain a "de-designation" provision that includes the agreed upon procedures for challenging any such confidential designation. A related dispute is which party must be tasked with bringing unresolved challenges to the Court for a determination.

Defendants propose that a "de-designation" provision, and the one specifically advanced by them, should be included in the protective order as required by Third Circuit precedent, and specifically *Cipollone* and *Wecht* (ECF No. 76 at 15-16; ECF No. 77-9 at ¶ 3). Defendants' proposed provision would require the Government, after Defendants' challenge to a confidential designation, to either consent to de-designation or file an application with the Court demonstrating good cause for the confidential designation. (ECF No. 77-9 at ¶ 3).

6

The Government acknowledges that, as the movant of the entry of the protective order, it bears the burden of justifying the confidential nature of any challenges to confidentially designated documents. (ECF No. 78 at 2). However, the Government counters that if the parties cannot reach resolution after a meet and confer, the Government should not be compelled to file a motion to maintain the confidential designation. Rather, Defendants are in the better position to present a factual basis for the challenge, and thus should be compelled to seek court intervention to either challenge the designation or move to modify the protective order. (*Id.* at 2).

To be sure, the Court must balance Defendants' interest in preparing a full defense with the Government's interest in restricting disclosure of confidential discovery materials. Guided by the Third Circuit's decision in *Cipollone*, the Court agrees with Defendants that it is not only appropriate, but prudent, to include a provision that incorporates the procedures in the event the party receiving Designated Confidential Materials under the protective order objects to a specific document's confidential designation. The procedures must set forth the timeframe by when the receiving party (here Defendants) must serve any such objections, a deadline for the designating party (here the Government) to respond, the consequence if no timely written response is received, and if received, the timeframe for conferring in good faith to resolve the dispute.

However, contrary to both parties' positions, the Third Circuit in *Cipollone* did not expressly state whether the designating party or the challenging party must present the dispute over confidentiality to the Court. *See Cipollone*, 785 F.2d at 1122. Accordingly, the Court declines to adopt either party's position that the opposing side must seek court intervention to address an unresolved dispute. Rather, this Court finds that judicial economy, practical considerations, and equity dictate that any unresolved disputes over confidentiality shall be presented jointly by the parties. To that end, the parties must promptly submit a joint letter to the

7

Undersigned, succinctly setting forth their respective positions in support of and in opposition to the confidential designation and/or any request to modify the protective order. It bears repeating that if the Court is called upon to determine whether good cause exists to protect any such confidential designated materials, the burden of proof remains with the Government as movant, "in justifying the protective order with respect to those documents [or materials]." *Cipollone*, 785 F.2d at 1122.

The parties are directed to meet and confer on appropriate language to include in the protective order, governing the agreed upon procedure if defense counsel, as counsel for the party receiving documents or information designated as confidential, objects to such designation of any such materials.

### C. Categories Three and Five of Designated Confidential Information

As detailed in Gatto's opposition brief, Defendants contend that the Government has not met its burden of proving that a protective order should cover information and materials set forth in category "(3) information about governmental and business matters that are not related to the allegations contained in the Indictment;" and category "(5) information of a personal nature including, but not limited to, marital and other intimate relationships, minor children, and personal financial matters." (Gatto Bf. at 19-21, ECF No. 76 & ECF No. 73-1).

However, during oral argument, defense counsel stated that, if the Court entered an umbrella protective order containing a de-designation provision, Defendants would withdraw their objections to these two categories of Confidential Discovery Materials. As the Court has ruled that the protective order must include a de-designation procedure, Defendants' prior objections to categories three and five of the Confidential Discovery Materials is considered resolved.

### D. Sharing Copies of Confidential Documents

With respect to fact witnesses, the Government contends that defense counsel may physically show confidential materials to a witness, but that the witness may not possess or keep copies of such materials. (*See* ECF No. 73-1 at ¶ 4). Defendants counter that they should be permitted to provide "Confidential Discovery Materials . . . to prospective witnesses and their counsel, provided they do not remain in the custody of the prospective witness or his or her counsel after communication with the prospective witness is concluded." (Levine Decl., Ex. I, ¶ 4).

Initially, the Court notes there is no dispute that prospective witnesses may *view* confidential information. Indeed, the Government's proposed order expressly allows it. (*See* ECF No. 73-1 ¶ 4) ("Notwithstanding the provisions of Paragraph 3, the Defense may discuss or review Confidential Discovery Materials with individuals who the Defense in good faith believes may be a prospective witness in the action and their counsel, as necessary to prepare the defense, but the Defense shall not permit such individuals to possess or retain Confidential Discovery Materials or duplicate versions.").

The Government points out there is no enforcement mechanism available should a third-party share copies of any of the confidential materials. (ECF No. 78 at 3-4). Indeed, given the voluminous sensitive nature of the discoverable PII and health information to be produced in this case, the potential consequences of any such disseminated or disclosed information are legitimate concerns. Further, the Government states that throughout the two-year pandemic, remote meeting applications provide for real-time sharing and viewing of documents and other media. (*Id.* at 4). The Government also asserts that it faces the same logistical challenges as defense counsel. As such, the Government submits that given the sensitive nature of the materials and inability to adequate enforcement mechanisms, the restrictions are necessary. This Court agrees.

9

First, the Government has explained that there is no enforcement mechanism to retrieve copies from witnesses should they fail to return them. (Gov't Reply Br. 3; ECF No. 78). Given the sensitive nature of the documents, the lack of ability to compel their return is concerning.

Second, Defendants are not prejudiced by this provision – they may show documents to prospective witnesses in person. Alternatively, if counsel choose to proceed remotely, most web-services have a method to share and review information electronically in real time. Therefore, the inability to give a prospective witness his or her own copy of confidential document is not a realistic impediment to preparing a full defense.

Third, it is not unusual in a criminal case to restrict the dissemination of confidential materials and prevent copies from being made and shared. Indeed, courts in this district have found that excluding even *defendants themselves* from reviewing information does not violate the Sixth Amendment. *See, e.g.*, *United States v. Torres*, 2020 WL 4500046, at *6 (D.N.J. Aug. 5, 2020); *see also United States v. Harry,* Crim. No. 19-246 (MCA) (attached to the Government's moving papers at ECF No. 73-2, at ¶ 6).

In sum, the Court agrees that the protective order may appropriately restrict defense counsel from providing prospective fact witnesses with hard copies of confidential documents.

IV.   **CONCLUSION**

For the reasons set forth above, it is

**ORDERED** that, the Government's motion for the entry of a protective order (ECF No. 73) is **GRANTED**. It is further

**ORDERED** that, on or before **March 18, 2022**, the parties shall jointly submit a protective order that amends the Government's proposal, *see* ECF Nos. 73-1, consistent with the findings and

rulings set forth in this Memorandum Opinion and Order.

s/Jessica S. Allen
**JESSICA S. ALLEN**
**United States Magistrate Judge**

**DATED: March 15, 2022**

11