**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**THOMAS FARESE and DOMENIC J. GATTO, JR.,**<br><br>Defendants. | Crim. No. 21-877 (KM)<br><br>**MEMORANDUM and ORDER** |

Defendants Thomas Farese and Domenic J. Gatto, Jr., moves for a bill of particulars and production of *Brady* exculpatory material. (DE 106, 107) Because this decision is intended for the guidance of the parties, it omits background information and will be unpublished.

**A. Bill of Particulars**

The Indictment, in eleven counts, charges defendants Gatto and Farese with various conspiracy and substantive offenses in connection with an alleged fraud and kickback scheme in connection with Medicare. Defendants move for a bill of particulars to clarify the charges and aid in trial preparation.

Rule 7(f), Fed. R. Crim. P., grants the court the authority to order a bill of particulars. A bill of particulars will be required where "an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989). What is required of an indictment is that it contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). The Indictment must state the essential elements of the offense; sufficiently apprise the defendant of the allegations he must meet; and be phrased in terms sufficiently specific to permit the defendant to plead a former acquittal or

conviction in the event of a subsequent prosecution. *See, e.g., United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007). A bill of particulars may be required "when the indictment itself is too vague and indefinite for such purposes." *United States v. Addonizio,* 451 F.2d 49, 63–64 (3d Cir. 1972).

The 36-page Indictment, particularly as it has been supplemented by discovery materials and government disclosures, amply fulfills all of those functions. It tracks the elements of the relevant statutes. It describes the manner in which the alleged fraudulent scheme operated. It describes the roles of each defendant, as well as the roles of certain named and anonymized coconspirators. It provides the dates on which certain fraudulent claims were submitted, the amounts of kickbacks received, and other details. The government, moreover, has provided extensive discovery. To each defendant it has made a substantial slide deck presentation citing excerpts of the key exhibits underlying its theories of guilt.

The first of Defendants' two chief demands is a list identifying all unnamed coconspirators. There is no general requirement in the federal rules for such a list. *See United States v. Coburn*, 439 F. Supp. 3d 361, 383 (D.N.J. 2020); *United States v. Depiro*, 2013 WL 663303, at *5 (D.N.J. Feb. 20, 2013). The government represents that it has already given a full account of the conspiratorial activities and the key players, enabling the defendants to prepare for trial. That approach is commendable, but I will require a bit more.

Given the complexity of the case, I will order production of

(a) a list of all of the persons or entities who the government contends were knowing participants in the conspiracy, with such list to be subject to a protective order as appropriate;

(b) a list of all persons whose statements the government plans to introduce at trial as coconspirator declarations, pursuant to Fed. R. Evid. 801(d)(2)(E).

To that extent, the motion for a bill of particulars as to the identification of conspirators is GRANTED.

The second of the Defendants' demands is that the government identify each particular fraudulent Medicare-related claim, identifying the theory of fraud underlying each. This, the defendants say, is necessary in order to prepare for trial because thousands of claims are contained in the spreadsheets provided by the government. This demand I interpret to be particularly relevant to the wide-ranging allegations of a Medicare fraud conspiracy in Count 1.[1]

The government responds that there is no baffling potpourri of disparate legal theories here. The sheer number of items reflects, not some sort of camouflage strategy, but the extensive scope of the alleged fraud conspiracy itself. This was a case of repetitive, similar transactions, consisting of the Defendant's payment of kickbacks and bribes for medically unnecessary braces and prescriptions. Some, it is true, relate to the DME fraud and others to the compounded medications. The government plausibly represents, however, that the claims data in the discovery sufficiently disclose which are which.

A line-by-line explanation would go far beyond the proper purpose of a bill of particulars. The government must disclose certain information, but is not required to "weave the information at its command into the warp of a fully integrated trial theory for the benefit of Defendants." *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971). Further, where the Indictment charges a widespread, pervasive conspiracy encompassing numerous smaller frauds, it is not necessary to possess the details of each one to prepare a defense. *See generally United States v. Salerno*, No. 3:10-CR-301, 2011 WL 6141017, at *6 (M.D. Pa. Dec. 9, 2011).

It is well settled that a bill of particulars is not a vehicle for disclosure of the government's evidence and "is not intended to be a discovery device." *United States v. DePaoli*, 41 F. App'x 543, 546 (3d Cir. 2002) (quoting *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985). Marking and exchange of exhibits, of course, will take place at the proper time.

---

[1] The substantive counts are based on individual, identified claims.

For the present, I find that the defense has been given an understanding of the allegations that goes well beyond the requirements of discovery and specificity in an indictment. Indeed, the government has provided considerable informal guidance to the particulars of its case. The motion for a bill of particulars regarding the individual fraudulent claims is DENIED.

### B. Disclosure of *Brady* Exculpatory Evidence

The government does not dispute that it is obligated to produce all exculpatory evidence under Fed. R. Civ. P. 16 and *Brady v. Maryland,* 373 U.S. 83 (1963). The government represents that all such material has been turned over. It recognizes that its obligation is ongoing.

#### 1. Pinpointing *Brady* material within the discovery

What Defendants appear to be demanding is that the government specify which items, among the large number of those produced in discovery, are exculpatory. That is ordinarily the job of defense counsel: "*Brady* and its progeny . . . impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials" that have been made available to the defense. *United States v. Pellulo*, 399 F.3d 197, 212 (3d Cir. 2005). "*Brady* does not obligate" the Government to "specify[] any particular documents that were helpful to the defense" because "the burden is on the defendant to exercise reasonable diligence" in identifying them. *Id.* at 213. The Court can envision an extreme case in which the exculpatory discovery was deliberately concealed or unfairly manipulated so as to present the defense with a needle-in-a-haystack. But absent such bad faith or concealment, there is no duty to help the defense identify and analyze which items may be considered exculpatory. *See United States v. Skilling*, 554 F.3d 529, 576-77 (5th Cir. 2009) ( "no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence," and no *Brady* violation where no evidence of bad faith and government took steps to facilitate the defendant's review), *reversed in part on other grounds*, 561 U.S. 358 (2010); *United States v. Ellis*, Crim. No. 19-693, 2020 WL 3962288, at *2 (D.N.J. July

13, 2020) ("If the government produced the discovery in a reasonable fashion and provided the defendant sufficient access to the materials, then the defendant bears the onus of reviewing the discovery for exculpatory information, even when a significant volume of discovery has been produced.") (citations omitted). And that rule has been applied in cases involving much greater volumes of discovery than this one. *See, e.g., Skilling*, 554 F.3d at 576–77 (several hundred million pages of discovery); *AU Optronics Corp.*, 2011 WL 6778520, at *1 (37 million pages).

There is no indication of bad faith or concealment here. Indeed, there is every indication that the government has been courteous and cooperative in responding to requests for information, furnished indices of productions, identified information for key participants and entities, organized investigative reports, and so on. The *Brady* motion is therefore denied insofar as it requests that the government identify material that could be construed as exculpatory from within the discovery that has been produced.

### 2. Reverse proffers, communications with counsel

I begin by reiterating the principle that *Brady* exculpatory material, wherever it may be found in the case file, must be produced. More specifically, Defendants argue that *Brady* requires the production of (a) government reverse proffers to witnesses, and (b) communications between the government and counsel for such witnesses. These, Defendants say, could undermine the witnesses' credibility or prove to be inconsistent with the witnesses' testimony.

It cannot simply be assumed that such materials contain *Brady* and therefore must be turned over for review by the Defendants. Reverse proffers, the government explains, are generally made to persuade persons (*e.g.*, potential witnesses) that the government possesses *inculpatory* evidence. Often such a proffer has the objective of inducing a guilty plea. Exculpatory material must of course be produced, whether or not it appears in a reverse proffer. But to posit that such a proffer must contain exculpatory material is to engage in speculation. Moreover, any trial evidence underlying the proffer will be

5

disclosed if required by court order or the federal rules; that it was once organized in the form of a reverse proffer is not in itself discoverable.

The demand for all communications between the government and the witnesses' attorneys is faulty for the same reasons, and has no sufficient basis in the *Brady* doctrine. Any exculpatory material contained therein, if it exists, is discoverable.[2] But nothing justifies wholesale disclosure of all such communications as such. *See, e.g., United States v. Weaver*, 992 F. Supp. 2d 152, 158 (E.D.N.Y. 2014) (rejecting similar request); *United States v. Singhal*, 876 F. Supp. 2d 82, 105 (D.D.C. 2012).

Defendants seem to be suggesting that materials relating to government communications with witnesses and their attorneys must contain impeachment material, producible under the doctrine of *Giglio v. United States*, 405 U.S. 150 (1972). The suggestion is speculative. At any rate, the government acknowledges its duty to produce *Giglio* impeachment material, whether contained in those communications or elsewhere. It correctly notes, however, that the request is premature; *Giglio* impeachment material (assuming any exists) will be produced on a schedule to be set by the Court.

## ORDER

**IT IS THEREFORE** this 12th day of October, 2023,

**ORDERED** that the defense motions (DE 106, 107) are GRANTED to the extent that the government shall produce

(a) a list of all of the persons or entities who the government contends were participants in the conspiracy, with such list to be subject to a protective order as appropriate;

(b) a list of all persons whose statements the government plans to introduce at trial pursuant to Fed. R. Evid. 801(d)(2)(E).

---

[2] One example, say the Defendants, would be an attorney statement to the government that is falsely exculpatory of the witness, or exculpatory of the defendants, which might fall within the scope of *Brady*. The short answer to this contention is that the government represents that it knows of no such attorney statements.

The motions are otherwise DENIED.

/s/ Kevin McNulty
_____
**KEVIN MCNULTY, U.S.D.J.**